State of N.C. v. E.I. du Pont de Nemours & Co., 2025 NCBC 44.

STATE OF NORTH CAROLINA

CUMBERLAND COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20CVS005612-250

STATE OF NORTH CAROLINA, *ex rel.* JEFFREY JACKSON, ATTORNEY GENERAL,

Plaintiff,

v.

E.I. DU PONT DE NEMOURS AND COMPANY; THE CHEMOURS COMPANY; THE CHEMOURS COMPANY FC, LLC; CORTEVA, INC.; DUPONT DE NEMOURS, INC.; and BUSINESS ENTITIES 1-10,

Defendants.

**ORDER AND OPINION ON MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

1.      **THIS MATTER** is before the Court following the 2 May 2025 filing of the *Motion to Dismiss for Lack of Subject-Matter Jurisdiction* (the Motion).  (ECF No. 392 [Mot.].)  Pursuant to Rule 12(b)(1) of the North Carolina Rules of Civil Procedure (the Rule(s)), Defendants EIDP, Inc., f/k/a E.I. DuPont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC (collectively, the Moving Defendants), seek dismissal of this action in its entirety for lack of subject-matter jurisdiction.

2.      For the reasons set forth herein, the Court **DENIES** the Motion.

*Rhine Law Firm, PC by Joel R. Rhine and Ruth Sheehan; North Carolina Department of Justice by Marc Bernstein and Asher P. Spiller; Taft Stettinius & Hollister, LLP by Robert A. Bilott and David J. Butler; Douglas & London, PC by Gary J. Douglas, Tate J. Kunkle, Michael London, and Rebecca Newman; Levin Papantonio Rafferty by Wesley A. Bowden; and Kelley Drye & Warren, LLP by Melissa Byroade, Kenneth Corley, Steven Humphreys, William J. Jackson, Elizabeth Krasnow, Ivan Morales, Lauren H. Shah, David Zalman, Levi Downing, Julia Schuurman, Curt D. Marshall, Ivan Morales, Fanny B. Turcios, Nancy*

*A. Yanochik, Laura W. Duncan, and Frances B. Morris for Plaintiff State of North Carolina, ex rel. Jeffrey Jackson, Attorney General.*

*Ellis & Winters, LLP by Jonathan D. Sasser, Thomas H. Segars, Scottie Lee Forbes, Steven Scoggan, Peter Borden, Madeleine Pfefferle, and Suraj Vege; McCarter & English, LLP by Lanny S. Kurzweil, Ryan A. Richman, Candee Wilde, David A. Schlier, Salvatore D'Alia, Amanda L. Rauer, Nakul Y. Shah, Claire Grega, and Michael Fasciale; Bartlit Beck, LLP by Katherine L.I. Hacker, Katharine A. Roin, Amy R. McCalib, and Daniel Brody; and Bradley Arant Boult Cummings LLP by C. Bailey King, Jr. and Robert R. Marcus for Defendant EIDP, Inc., f/k/a E.I. DuPont de Nemours and Company.*

*Ellis & Winters, LLP by Jonathan D. Sasser, Thomas H. Segars, Scottie Lee Forbes, Steven Scoggan, Peter Borden, Madeleine Pfefferle, and Suraj Vege; Robinson, Bradshaw & Hinson, P.A. by Steven R. DeGeorge; McCarter & English, LLP by Lanny S. Kurzweil, Ryan A. Richman, Candee Wilde, David A. Schlier, Salvatore D'Alia, Amanda L. Rauer, Nakul Y. Shah, Claire Grega, and Michael Fasciale; Arnold & Porter Kaye Scholer LLP by Joel M. Gross, Alison Rumsey, Tyler L. Burgess, Julia H. Wingfield, and Julia Kindlon; and Norris McLaughlin, P.A. by Margaret Raymond-Flood and Kim Weber for Defendants The Chemours Company and The Chemours Company FC, LLC.*

Robinson, Chief Judge.

## I. INTRODUCTION

3. This action arises out of the alleged contamination of North Carolina's air, land, and water through operations at a chemical manufacturing facility known as Fayetteville Works located in Bladen and Cumberland Counties in North Carolina. Plaintiff State of North Carolina (Plaintiff) alleges that the Moving Defendants have caused this contamination by using, manufacturing, and discharging polyfluoroalkyl substances (PFAS), which resist biodegradation, persist in the environment, and accumulate in people and other living organisms.

4.     The Moving Defendants have brought this Motion seeking dismissal of this action in its entirety, contending that the repeal of N.C.G.S. § 114-2(8)(a) has stripped the Attorney General, Jeffrey Jackson, of standing to bring this suit, as well as raising arguments regarding separation of powers concerns.

## II.     FACTUAL AND PROCEDURAL HISTORY

5.     "The filing of a motion to dismiss under Rule 12(b)(1) does not raise an issue of fact[,] [i]t challenges the jurisdiction of the court over the subject matter." *Journeys International, Inc. v. Corbett*, 53 N.C. App. 124, 125 (1981).     The extensive background of these cases is set forth in previous orders and opinions. *See State ex. rel. Stein v. E.I. DuPont de Nemours & Co.,* 2021 NCBC LEXIS 75 (N.C. Super. Ct. Sept. 9, 2021), *aff'd in part, remanded in part, State ex rel. Stein v. E.I. du Pont de Nemours & Co.,* 382 N.C. 549 (2022)); *State ex. rel. Stein v. E.I. DuPont de Nemours & Co.,* 2024 NCBC LEXIS 22 (N.C. Super. Ct. Feb, 7, 2024).

6.     The Court recites only the factual background relevant to the issues presented in this Motion.

7.     On 13 October 2020, this action was initiated by Plaintiff with the filing of its Complaint. (*See generally* Compl., ECF No. 2.)     In this action, Plaintiff is "represented by and through the Attorney General of the State of North Carolina" pursuant to N.C.G.S. § 114-2. (Compl. ¶ 15; *see also* Memo. L. Opp'n Defs.' Mot. Dismiss at 6 (providing that Plaintiff relies on N.C.G.S. § 114-2(8)(a) to support its contention that "[t]he State, through its Attorney General, is solely authorized to

bring suit 'in all matters affecting the public interest'[.]"), ECF No. 106 [MTD Opp. Br.].)

8. On 3 June 2024, while responding to the Moving Defendants' Second Set of Interrogatories, Plaintiff was asked to "identify all facts that support the State's contention that the Attorney General Joshua L. Stein, is the appropriate relator to bring this lawsuit." (Mot. Ex. A. at 13, ECF No. 392.2 [Ex. A.].) In response, Plaintiff referred the Moving Defendants to its Complaint and its Memorandum of Law in Opposition to Defendants' Motion to Dismiss, and provided that "[t]he Attorney General is solely authorized to bring suit 'in all matters affecting the public interest'[,]" citing N.C.G.S. § 114-2(8)(a).[1] (Ex. A. at 13.) Plaintiff explained that this action "involves matters that affect the public interest because PFAS discharged, released, and emitted from Fayetteville Works has contaminated the State's natural resources." (Ex. A. at 13.)

9. On 11 December 2024, the General Assembly repealed N.C.G.S. § 114-2(8)(a) in its entirety. (*See* Mot. Ex. B. at 48–49, ECF No. 392.3 [Ex. B.].)

10. Thereafter, discovery concluded on 3 March 2025, and post-discovery dispositive motions were filed on 2 May 2025. (*See* ECF No. 294.)

11. Also on 2 May 2025, the Moving Defendants filed the Motion. (*See* Mot.) Following complete briefing on the Motion, on 23 July 2025, the Court held a hearing (the Hearing), where all parties were represented by counsel. (*See* ECF No. 442.)

---

[1] Plaintiff subsequently amended this response—after the Motion was filed—providing that "[t]he State acts pursuant to its common law authority consistent with the public trust doctrine and as *parens patriae*. The Attorney General is also authorized to bring suit in matters in which the State has an interest." (Reply Br. Supp. Mot. 4, ECF No. 431 [Reply].)

12. The Motion is now ripe for resolution.

### III. LEGAL STANDARD

13. The Moving Defendants move to dismiss this action in its entirety pursuant to Rule 12(b)(1). "A Rule 12(b)(1) motion to dismiss represents a challenge to the trial court's subject matter jurisdiction over a plaintiff's claims." *Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 572 (2023); *see also* N.C.G.S § 1A-1, Rule 12(b)(1). "In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court 'may consider matters outside the pleadings' in determining whether subject matter jurisdiction exists[.]" *Atl. Coast Conf. v. Bd. of Trs. of Fla. State Univ.*, 2024 NCBC LEXIS 53, at **11 (N.C. Super. Ct. Apr. 4, 2024) (quoting *Harris v. Matthews*, 361 N.C. 265, 271 (2007)). Ultimately, "[t]he plaintiff bears the burden of establishing subject matter jurisdiction." *Lau v. Constable*, 2022 NCBC LEXIS 75, at **10 (N.C. Super. Ct. July 11, 2022).

### IV. ANALYSIS

14. The ultimate question to be answered is whether the Attorney General has the authority to bring this lawsuit. First, the Court will address whether the Attorney General has authority to pursue this lawsuit and, if so, where that authority is rooted. The Court then will turn its attention to whether there are separation of powers concerns regarding who is allowed to bring the current lawsuit—the Attorney General or the North Carolina Department of Environmental Quality (NCDEQ).

## A. Power of the Attorney General to Originate & Maintain This Action

15.     The Court begins by examining the authority of the Attorney General to originate and maintain the instant case on behalf of the State.[2]  This requires addressing two subsidiary issues: (1) whether N.C.G.S. § 114-2(8)(a), before its repeal, conferred authority on the Attorney General to originate and maintain the instant case; and (2) whether, aside from the statutory authority provided by N.C.G.S. § 114-2(8)(a), the Attorney General has authority under North Carolina common law to originate and maintain this action.

16.     The Court addresses each issue in turn.

### 1.     Attorney General's Authority under N.C.G.S. § 114-2(8)(a) Before Its Repeal

17.     The Court first turns to the issue of whether N.C.G.S. § 114-2(8)(a), before its repeal, conferred authority on the Attorney General to originate and maintain the present case.

18.     First, our State Constitution establishes the office of Attorney General.  *See* N.C. Const. art. III, § 7, cl. 1. (providing that "an Attorney General . . . shall be elected by the qualified votes of the State[.]")  It further provides that "[his] duties shall be prescribed by law." *Id.* at cl. 2.

19.     One such law—N.C.G.S. § 114-2(8)(a)—provided in relevant part that "[the Attorney General] shall also have the authority to institute and originate proceedings

---

[2] The parties, throughout their filings, refer to the Attorney General's "standing" to sue, which appears to conflate the issue of whether Plaintiff, the State, has *parens patriae* standing, with the legally distinct issue of whether the Attorney General is the proper relator to represent the State.  This Order and Opinion will, therefore, refer to the Attorney General's "power" or "authority" to originate and maintain this case.

before such courts, officers, agencies or bodies and shall have authority to appear before agencies on behalf of the State and its agencies and citizens in all matters affecting the public interest." N.C.G.S. § 114-2(8)(a) (repealed 2024).

20.     As noted above, Plaintiff originally cited N.C.G.S. § 114-2(8)(a) in an interrogatory response when asked what facts supported the contention that "Attorney General Joshua L. Stein, is the appropriate relator to bring this lawsuit[.]" (*See* Ex. A at 13.) Plaintiff later changed its response,[3] (*see* Reply 4), and now Plaintiff argues that its original citation of N.C.G.S. § 114-2(8)(a) was in error, (Pl.'s Resp. Opp'n Mot. 9, ECF No. 418 [Br. Opp.]). Plaintiff now contends that the repeal of the statute it cited is effectively irrelevant because, even when it was in effect, N.C.G.S. § 114-2(8)(a) only applied to proceedings before our Utilities Commission and therefore is inapplicable to the instant case. (Br. Opp. 6–8.)

21.     Plaintiff relies on *Bailey v. State*, a case from the Supreme Court of North Carolina appearing to limit the breadth of N.C.G.S. § 114-2(8)(a) to proceedings before our Utilities Commission. *See* 353 N.C. 142, 154 (2000). However, subsequent North Carolina Court of Appeals cases limited the holding of *Bailey* to the first sentence of the statute—the only sentence at issue in that case—and rejected its

---

[3] The Moving Defendants argued in their briefing on the Motion that Plaintiff's original interrogatory response was definitive and limited the Attorney General's authority for bringing this lawsuit to strictly N.C.G.S. § 114-2(8)(a). However, as Plaintiff points out, the interrogatory asked for "what facts supported the contention" that the Attorney General is the proper relator, not the legal authority he has to originate and maintain this action. Therefore, the Court does not consider the answer originally given by Plaintiff in its interrogatory response as limiting the Attorney General's authority to bring this lawsuit to his *statutory* authority. In any event, in its oral argument at the Hearing, the Moving Defendants' counsel abandoned the position taken in their briefing on this point.

application to the second sentence as based on dicta.  *See, e.g., Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 119 (2002) (accepting N.C.G.S. § 114-2(8)(a) as basis for Attorney General's authority in a natural resources case unrelated to our Utilities Commission).

22.     The Moving Defendants argue that the statute had wider applicability than solely to proceedings before the Utilities Commission and that the legislature's repeal of that statutory provision in late 2024 left the Attorney General without a proper basis to pursue this litigation.  (Br. Supp. Mot. 5–7, ECF No. 393 [Br. Supp.].)  The Court agrees with the Moving Defendants, at least as to whether the statute pre-repeal provided a basis for prosecution of this case.  As Plaintiff has asserted claims in this action related to harm done to the State of North Carolina's natural resources and conduct related thereto, it is clear that N.C.G.S. § 114-2(8)(a) conferred authority on the Attorney General to originate and maintain the present case before the statute's repeal.

23.     As a result, the Court now turns its attention to whether common law authority exists that also allows the Attorney General to maintain this action given the repeal of N.C.G.S. § 114-2(8)(a).

**2.     Common Law Authority of the Attorney General**

24.     It has long been established that "the Attorney General has had and continues to be vested with those powers of the Attorney General that existed at the common law, that are not repugnant to or inconsistent with the Constitution or laws of North Carolina."  N.C.G.S. § 114-1.1.

25. The Moving Defendants contend that they are "unaware of any North Carolina authority holding that the Attorney General can sue in a general *parens patriae* or public trustee capacity to recover damages for alleged harm to [the] natural resources or the environment [of North Carolina]." (Br. Supp. 6.) Further, they argue that because the General Assembly is the " 'policy-making agency of our government'[,]" the repeal of N.C.G.S. § 114-2(8)(a) "stripped the Attorney General of any common-law power to bring or maintain this action." (Br. Supp. 6–7.)

26. Plaintiff disagrees, contending that the Attorney General properly originated and may maintain all of its claims under the Attorney General's common law powers (1) to prosecute actions for the protection and defense of the property and revenue of the sovereign, (Br. Opp. 4), and (2) to originate and maintain suits to abate public nuisances, (Br. Opp. 8).

27. Notably, at the Hearing, the Moving Defendants seemed to abandon the argument related to whether a "statute supplants the common law rule" that they originally raised in their brief in support of the Motion. While the Moving Defendants did not appear to rest on this argument at the Hearing, the Court determines that the General Assembly did not clearly divest the Attorney General of his narrower common law authority through the repeal of N.C.G.S. § 114-2(8)(a). As a result, the Court now addresses the applicability of the Attorney General's common law powers to Plaintiff's individual claims.

28. North Carolina, upon independence from Great Britain, inherited the common law of England not repugnant to or inconsistent with its own laws. *See*

*Martin v. Thornburg*, 320 N.C. 533, 546 (1987); *see also* N.C.G.S. § 114-1.1. Under English common law at that time, the Attorney General had the power to "prosecute all actions necessary for the protection and defense of the property and revenue of the Crown." *Martin*, 320 N.C. at 546. The Crown was the sovereign of England; however, in North Carolina, the People are sovereign. *See id.* Further, "prosecute" has been defined as "[t]o follow up; to carry on an action or other judicial proceeding; to proceed against a person criminally. To 'prosecute' an action is not merely to commence it, but includes following it to an ultimate conclusion." Prosecute Definition, *Black's Law Dictionary* (5th ed. 1979), *available at* Westlaw.

29. Further, North Carolina law has established that the Attorney General has the power to "prosecute all actions necessary for the protection and defense of the property and revenue of the sovereign people of North Carolina." *Martin*, 320 N.C. at 546. Additionally, North Carolina has a quasi-sovereign interest in its natural resources, *see Georgia v. Tenn. Copper Co.,* 206 U.S. 230, 237 (1907), and a quasi-sovereign interest is a form of property interest, *see C. D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g. Co.*, 326 N.C. 133, 146 (1990).

30. Therefore, the Court concludes that the Attorney General has had, and continues to have, the power to originate and maintain suits for the protection and defense of North Carolina's natural resources on behalf of the people of North Carolina and the State as a whole.

### a. Environmental Claims: Counts One through Four

31. Plaintiff has brought four claims related to the environmental impacts to North Carolina's natural resources as a result of the Moving Defendants' conduct: Count One for negligence, Count Two for trespass, Count Three for public nuisance, and Count Four for fraud. (*See* Compl. ¶¶ 197–230.)

32. Plaintiff alleges that (1) "Defendants negligently caused the contamination of the environment, included but not limited to the land, water, air, biota, and other natural resources, and habitats and ecosystems in the State of North Carolina[,]" (Compl. ¶ 198); (2) "Defendants intentionally discharged, caused, and continue to cause PFAS to contaminate air, groundwater, surface water, soils, sediments, biota, and other property owned or held in trust by North Carolina on behalf of its citizens[,]" (Compl. ¶ 212); (3) "Defendants have caused . . . environmental contamination by allowing PFAS to enter into the air, soil, sediments, biota, surface water, groundwater, and property held" by the State, (Compl. ¶ 218); and (4) the Moving Defendants knew that "PFAS posed human health and environmental risks" but "failed to disclose the truth and instead misled the State" regarding the dangers of PFAS, (Compl. ¶ 225).

33. The Attorney General's authority to bring a negligence suit for damages to land, water, and air held by the People as private citizens is encompassed within the power to prosecute actions for the protection and defense of the property of the sovereign citizens of North Carolina. Furthermore, the State has an independent property interest "in all the earth and air within its domain." *Tenn. Cooper*

*Co.*, 206 U.S. at 237. The resources at issue in this case, as alleged by Plaintiff, are either held by North Carolina's citizens or by the State, or alternatively, the State has a quasi-sovereign interest in those resources.

34. As to Counts One and Two for negligence and trespass, the harm to the State's natural resources and property belonging to the State are harms which the Attorney General has the authority to prosecute for the protection and defense of the property of the State. As to Count Three for public nuisance, it has been established that "[t]he state is the proper party to complain of wrong done to its citizens by a public nuisance." *Pedrick v. Raleigh & P.S. R. Co.*, 143 N.C. 485, 489 (1906). Likewise, as to Count Four for fraud related to concealment of the harm to North Carolina's natural resources as a result of the Moving Defendants' conduct, the Court concludes that it is clear from the Plaintiff's pleadings that there is a direct correlation between the environmental harm endured and the alleged fraudulent concealment of that harm.

35. Therefore, the Court finds that the Attorney General has common law authority to originate and maintain this action as it relates to Counts One through Four for the harm related to Plaintiff's environmental claims.

**b.    Fraudulent Concealment Claims: Counts Five through Eight**

36. Plaintiff alleges a number of ways the Moving Defendants have concealed information relating to their discharge of PFAS into North Carolina's environment, as well as a series of asset transfers and assumption of liabilities that occurred while

the Moving Defendants were insolvent or that rendered Moving Defendants insolvent. (*See* Compl. ¶¶ 225, 231–71.)

37. Plaintiff contends, and the Court agrees, that "[b]ecause the natural resource-related claims are 'actions necessary for the protection and defense of the property . . . of the sovereign people of North Carolina,' then the fraudulent transfer claims ineluctably are also 'necessary for the protection and defense of the property and revenue' of the State." (Br. Opp. 5.)

38. The Court, therefore, concludes that the Attorney General has common law authority to originate and maintain this action as it relates to Counts Five through Eight. The power to prevent the fraudulent concealment of activities causing pollution, which, in turn, harm the property interests of the People and the State, is included within the Attorney General's common law authority to prosecute actions for the protection and defense of the property of the sovereign People and the State.

39. As a result, the Court **DENIES** the Motion on these grounds, as the Attorney General had authority at the outset of this case, and continues to have authority throughout the pendency of this case, to originate and maintain this action on behalf of the State of North Carolina.

## B. The Separation of Powers Does Not Bar the Attorney General from Maintaining the Instant Case

40. While the Court has determined herein that the Attorney General has authority to originate and maintain this action, the Court next considers the Moving Defendants' additional separation of powers argument, which focuses on their

position that the Attorney General lacks the ability to bring this suit except in the name of, and at the request of, the NCDEQ.

41. The Moving Defendants contend that the General Assembly "confer[red] such authority upon the Department of Environmental Quality as shall be necessary to administer a complete program of water and air conservation, pollution abatement and control[,]" and, as such, when lawsuits arise related to those duties prescribed to the NCDEQ, the Attorney General shall "initiate actions in *the name of and at the request of* the Department [of Environmental Quality]." (Br. Supp. 10 (quoting N.C.G.S. § 113-131(d)) (emphasis in original) (footnote omitted).) The Moving Defendants note that the Attorney General has explicitly *not* brought this case on behalf of the NCDEQ. (*See* Br. Supp. 7 (quoting MTD Opp. Br. 24–25 (noting that the Attorney General and NCDEQ 'have distinct and independent objectives'.")).)

42. Further, the Moving Defendants argue that the Complaint in this action "is replete with reference to regulatory matters and environmental statutes falling under the NCDEQ's purview[,]" and as a result, "[t]his lawsuit falls squarely within NCDEQ's regulatory realm[,]" and the Attorney General "impermissibly encroaches on the power and responsibility that the General Assembly gave to NCDEQ[.]" (Br. Supp. 12.)

43. Plaintiff counters that contention, arguing that a statute cannot abrogate the Attorney General's common law powers absent a clear expression from our General Assembly. (Br. Opp. 11.) Moreover, Plaintiff argues that "[Defendants'] environmental statutes are not as plenary as the[y] . . . suggest[,]" because the

NCDEQ is limited in the remedies it may seek in the form of injunctive relief, civil penalties, and referring matters for criminal enforcement. (Br. Opp. 13.) Conversely, Plaintiff argues that the Attorney General's common law powers empower him to additionally seek damages beyond those statutorily allowed by the NCDEQ. (Br. Opp. 13–14.)

44. The Court finds that there is no clear expression limiting the Attorney General's common law powers with regard to N.C.G.S. § 143-211, which provides that the State has "a public policy . . . to provide for the conservation of its water and air resources." Furthermore, the Court reads N.C.G.S. § 113-131(d) as requiring the Attorney General to act as attorney for the NCDEQ when the NCDEQ requests it; however, this does not necessarily bar the Attorney General from representing the State in natural resource cases without the NCDEQ's explicit request. Given the additional fact that NCDEQ lacks statutory authority to seek some of the specific relief sought in this action, it appears to the Court that only the Attorney General has the authority to seek such damages and relief for the State and citizens of North Carolina.

45. Therefore, the Court hereby **DENIES** the Motion on these grounds.

## V. CONCLUSION

46. **THEREFORE**, the Court hereby **DENIES** the Motion. The Attorney General had authority to originate this action, and continues to have authority to maintain this action pursuant to authority existing under common law.

**SO ORDERED**, this the 7th day of August, 2025.


        /s/ Michael L. Robinson
_____
Michael L. Robinson
Chief Business Court Judge