## GEORGIA v. TENNESSEE COPPER COMPANY.

### BILL IN EQUITY.

No. 5, Original. Argued February 25, 26, 1907.—Decided May 13, 1907.

When the States by their union made the forcible abatement of outside nuisances impossible to each, they did not thereby agree to submit to whatever might be done. They retained the right to make reasonable demands on the grounds of their still remaining quasi-sovereign interests, and the alternative to force a suit in this court.

This court has jurisdiction to, and at the suit of a State will, enjoin a corporation, citizen of another State, from discharging over its territory noxious fumes from works in another State where it appears that those fumes cause and threaten damage on a considerable scale to the forests and vegetable life, if not to health, within the plaintiff's State.

A suit brought by a State to enjoin a corporation having its works in another State from discharging noxious gases over its territory is not the same as one between private parties, and although the elements which would form the basis of relief between private parties are wanting, the State can maintain the suit for injury in a capacity as quasi-sovereign, in which capacity it has an interest independent of and behind its citizens in all the earth and air within its domain; and whether insisting upon bringing such a suit results in more harm than good to its citizens, many of whom may profit through the maintenance of the works causing the nuisance, is for the State itself to determine.

THE facts are stated in the opinion.

*Mr. John C. Hart,* Attorney General of the State of Georgia, and *Mr. Ligon Johnson* for the State of Georgia:

A public nuisance, merely as such, is not abatable or actionable at the direct instance of an individual. Where the public nuisance is at the same time working some special injury to the citizens, by reason of this special injury the individual may seek to abate same, but the right of action is with relation to the particular and private injury and not the public nuisance. The mere fact that the subject matter of the controversy is a public nuisance affords no right of action in the premises to any private person. Not only is this a general rule of law but it is also incorporated in the statute law of the State of Georgia. Citizens of Georgia, by reason of the statutes denying them right of action in the premises, would have been powerless, the right of redress in such matters being reserved solely to the State.

Sections 3858 and 4761 of the Code of Georgia of 1895 are practically nothing more than the codification of the law as it existed. The general rule is stated in *In re Debs,* 158 U. S. 587. And see *Attorney General* v. *Tudor Ice Co.,* 104 Massachusetts, 239; *Attorney General* v. *Jamaica Pond Corporation,* 133 Massachusetts, 361; *State* v. *Goodnight,* 70 Texas, 682.

That the State is a proper party and that the controversy is justiciable in this court was decided in *Missouri* v. *Illinois,* 180 U. S. 241.

For other authorities in point see Eden on Injunction, 267; Story, Eq. Juris., § 921; Daniels, Chan. Pl. and Pr., 4th ed., 1636; *Penn* v. *Wheeling Bridge Co.,* 13 How. 518; *Irwin* v. *Dixon,* 9 How. 27; *Phalen* v. *Virginia,* 8 How. 168; *Smith* v. *Richter,* 159 U. S. 398; *Attorney General* v. *Forbes,* 2 Myl. & Cr. 123.

Georgia appeals to the court to protect her and her sovereignty and her enforcement of her laws within and with relation to the section and community injured. The maintenance of a public nuisance is a crime by common law and by the statute law of both Tennessee and Georgia. The offender is

in the State of Tennessee. The criminal act, so far as Georgia is concerned, is within the State of Georgia. The offender is without the jurisdiction and beyond the reach of the laws of Georgia, while the acts have been, and are being, committed and threatened in Georgia. In consequence, Georgia, without the aid of this court, is not only unable to punish constantly recurring criminal and injurious acts within her territory and upon her soil and citizens, but is also unable to enforce her laws, civil or criminal, and to maintain her sovereignty within her dominion.

Every State possesses sole and exclusive jurisdiction over her own territory, not only with reference to her soil, but of acts committed thereon, as well as of the citizens and inhabitants thereof. *Hoyt* v. *Sprague*, 103 U. S. 630; *Pennoyer* v. *Neff*, 95 U. S. 44; *Simpson* v. *State*, 92 Georgia, 42; 1 Bishop, Crim. Proceed. 53; Bishop, Crim. Law, § 110; *Commonwealth* v. *Macloon et al.*, 101 Massachusetts, 1; Rorer on International Law, 2d ed., 323; Minor, Conflict of Laws, 499.

As to the preservation of the sovereignty of a State see *United States* v. *Texas*, 143 U. S. 621; *Fowler* v. *Lindsay*, 3 Dall. 411.

The offender in this case is a corporation. Its corpus is in Tennessee, but this, without the consent of Congress, could not be surrendered to Georgia, even if Tennessee desired. Its chief officers are non-residents of Tennessee. The offense being merely a misdemeanor is not such that Tennessee would recognize by extradition.

The State in its suit, as will be seen, is not seeking a mere injunction in equity against the commission of a crime. It appeals to this court to protect it in its sovereign attributes.

Unless this cause may be maintained in this court the means of the Federal Government cannot be said to be adequate to its ends, and a State can maintain its sovereignty only through the mere tolerance of her sister States.

The police power, the right and power of the State to protect the public safety, health and welfare, as well as the welfare,

health, safety and comfort of each citizen, resides in the States and was never surrendered to the general government, and such right now rests in the State of Georgia, and was and is called into action by the resolution of its legislature as in the bill set forth.

The highest and most binding duties of the sovereign are often enforcible only through the police power. Fertilizer Co. v. Hyde Park, 97 U. S. 659; Beer Co. v. Massachusetts, 97 U. S. 33; Holden v. Hardy, 169 U. S. 392; Lawton v. Steele, 152 U. S. 133; New York v. Miln, 11 Pet. 103.

The Constitution of the United States guarantees protection to the State of Georgia against any invasion whatever, whether such invasion be by force of arms or other means, by another State or its citizens, or by a foreign government. It is sufficient that the means be hostile or harmful and be such that Georgia cannot prevent or protect herself against without the use of force upon foreign territory.

In the case at bar Georgia has exhausted all amicable or other powers left in her by the Constitution. She has applied to Tennessee to prevent and abate the further commission of the acts complained of, acts which, in their effect, are not only criminal in the State of Georgia, but which result in laying the territory of the State in waste more surely and completely than could be accomplished by any invading army bent upon its destruction. Tennessee has refused to restrain her citizens in the commission of such acts, declines to take any steps in the premises, and shields the defendants in the continuation of a most effective and harmful invasion.

Georgia has used every friendly office, has sought through every means open to her to protect her territory and her citizens. She is denied by the Constitution the right of invasion or other aggressive action, and under such denial is powerless in the premises without the aid of this honorable court and the enforcement of the constitutional guarantee of protection through this court, substituted in the place of the right of a State to take direct or hostile action in an endeavor to main-

tain her sovereignty and her rights and to preserve the life, health and comfort of her citizens. Constitution of the U. S., Art. IV, Sec. 4; Federalist, LXXX; *Missouri* v. *Illinois*, 180 U. S. 208; *Debs, Petitioner*, 158 U. S. 564; *Rhode Island* v. *Massachusetts*, 12 Pet. 657; *Hans* v. *Louisiana*, 134 U. S. 1; *Kansas* v. *Colorado*, 185 U. S. 125.

*Mr. Howard Cornick*, with whom *Mr. John H. Frantz, Mr. James B. Wright* and *Mr. Martin H. Vogel* were on the brief, for the defendant the Tennessee Copper Company:

The bill and the proof wholly fail to establish such a condition as would give this court jurisdiction of the subject matter of this litigation.

The State of Georgia has not made out in her bill nor in her proof, such a state of facts showing such direct interest in this controversy as entitles her under the Constitution of the United States to maintain this action to redress supposed wrongs done to her domain.

The State of Georgia, in her bill and in her proof, shows no such state of facts as to entitle her to maintain this suit in her sovereign capacity as *parens patriæ*, trustee, guardian or representative of her citizens.

The threatened reduction of taxable values does not create a direct interest in the controversy, but at most a remote interest. The proof does not support the allegations of the bill.

The power of taxation is an incident of sovereignty and not a property right. Cooley on Taxation, 3d ed., 7; *McCulloch* v. *Maryland*, 4 Wheat. 316, 428; *Bank* v. *Billings*, 4 Pet. 514; *Case of Freight Tax*, 15 Wall. 278.

It appears from the proof that there has been absolutely no injury whatever to the streams of the territory under discussion; that with the exception of one small one all the streams of this territory drain into and through the State of Tennessee, and that none of these streams are navigable. *Kansas* v. *Colorado*, 185 U. S. 125, distinguished. Of these species of property according to the law of nature and of nations

there is and can be no private ownership, but ownership is in the State as representative of the public.   3 Kent's Com. 445.

The bill alleges injury to the health of the citizens, though the proof of the plaintiff utterly fails to support this allegation.   *Missouri* v. *Illinois,* 180 U. S. 208, distinguished.

Neither the bill nor the proof shows such injury to the property of citizens as to entitle the State to maintain this suit on behalf of citizens.

All of the proof of plaintiff, where injury is shown to have occurred, demonstrates clearly that the citizens could be fully compensated in damages for injury, if any, which they may have sustained; and that if their injuries could not be estimated and their compensation fixed in damages, no reason is shown why they would not be entitled to the same relief which is being sought in their behalf by the State.

In order to prosecute an original suit in the Supreme Court, a State must show just such interest in the controversy in question as an individual must show in order to maintain a suit in a proper jurisdiction, and it is the dignity of the State rather than the character of the controversy which entitles it to come into this court by original proceeding.   *New Hampshire* v. *Louisiana,* 108 U. S. 76 *et seq.; Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 289; *Louisiana* v. *Texas,* 176 U. S. 1; *California* v. *Southern Pac. Co.,* 157 U. S. 261.

The proof as to the injury alleged by the bill is not only doubtful, but preponderates in favor of defendants.

An injunction to restrain a nuisance will issue only in a case where the fact of the nuisance is made out upon determinate and satisfactory evidence.   If the evidence be conflicting and the injury be doubtful, that conflict and doubt will be ground for withholding the injunction.   1 Wood on Nuisance, 3d ed., 732; 1 High on Injunctions, 4th ed., § 870.

Irrespective of the millions of dollars invested in the operations of these defendants and of their vested rights in their properties, the State of Georgia is estopped from seeking the

injunctive relief prayed in the bill on account of the injurious effect which such an injunction would have upon the com-munities established by these operations. Not only have the acquiescence and laches of the State of Georgia permitted the defendants in this case to make their investments, depending upon the inference that no complaint having heretofore been made by the State of Georgia, no complaint would be made; but the State of Georgia, by sleeping upon her rights, if any rights she may have had, has allowed the community to become built up; has allowed prosperous and thriving towns and cities to be created; has allowed thousands of people to acquire their homes and make their investments and establish their family and social ties with the feeling of security against complaint by the State of Georgia as to these operations.

*Mr. James G. Parks* for the Ducktown Sulphur, Copper and Iron Company.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill in equity filed in this court by the State of Georgia, in pursuance of a resolution of the legislature and by direction of the Governor of the State, to enjoin the defendant Copper Companies from discharging noxious gas from their works in Tennessee over the plaintiff's territory. It alleges that in consequence of such a discharge a wholesale destruction of forests, orchards and crops is going on, and other injuries are done and threatened in five counties of the State. It alleges also a vain application to the State of Tennessee for relief. A preliminary injunction was denied, but, as there was ground to fear that great and irreparable damage might be done, an early day was fixed for the final hearing and the parties were given leave, if so minded, to try the case on affidavits. This has been done without objection, and, although the method would be unsatisfactory if our decision turned on any nice question of fact, in the view that we take we think it unlikely that either party has suffered harm.

The case has been argued largely as if it were one between two private parties; but it is not. The very elements that would be relied upon in a suit between fellow-citizens as a ground for equitable relief are wanting here. The State owns very little of the territory alleged to be affected, and the damage to it capable of estimate in money, possibly, at least, is small. This is a suit by a State for an injury to it in its capacity of *quasi*-sovereign. In that capacity the State has an interest independent of and behind the titles of its citizens, in all the earth and air within its domain. It has the last word as to whether its mountains shall be stripped of their forests and its inhabitants shall breathe pure air. It might have to pay individuals before it could utter that word, but with it remains the final power. The alleged damage to the State as a private owner is merely a makeweight, and we may lay on one side the dispute as to whether the destruction of forests has led to the gullying of its roads.

The caution with which demands of this sort, on the part of a State, for relief from injuries analogous to torts, must be examined, is dwelt upon in *Missouri* v. *Illinois*, 200 U. S. 496, 520, 521. But it is plain that some such demands must be recognized, if the grounds alleged are proved. When the States by their union made the forcible abatement of outside nuisances impossible to each, they did not thereby agree to submit to whatever might be done. They did not renounce the possibility of making reasonable demands on the ground of their still remaining *quasi*-sovereign interests; and the alternative to force is a suit in this court. *Missouri* v. *Illinois*, 180 U. S. 208, 241.

Some peculiarities necessarily mark a suit of this kind. If the State has a case at all, it is somewhat more certainly entitled to specific relief than a private party might be. It is not lightly to be required to give up *quasi*-sovereign rights for pay; and, apart from the difficulty of valuing such rights in money, if that be its choice it may insist that an infraction of them shall be stopped. The States by entering the Union did not sink

to the position of private owners subject to one system of private law. This court has not quite the same freedom to balance the harm that will be done by an injunction against that of which the plaintiff complains, that it would have in deciding between two subjects of a single political power. Without excluding the considerations that equity always takes into account, we cannot give the weight that was given them in argument to a comparison between the damage threatened to the plaintiff and the calamity of a possible stop to the defendants' business, the question of health, the character of the forests as a first or second growth, the commercial possibility or impossibility of reducing the fumes to sulphuric acid, the special adaptation of the business to the place.

It is a fair and reasonable demand on the part of a sovereign that the air over its territory should not be polluted on a great scale by sulphurous acid gas, that the forests on its mountains, be they better or worse, and whatever domestic destruction they have suffered, should not be further destroyed or threatened by the act of persons beyond its control, that the crops and orchards on its hills should not be endangered from the same source. If any such demand is to be enforced this must be, notwithstanding the hesitation that we might feel if the suit were between private parties, and the doubt whether for the injuries which they might be suffering to their property they should not be left to an action at law.

The proof requires but a few words. It is not denied that the defendants generate in their works near the Georgia line large quantities of sulphur dioxid which becomes sulphurous acid by its mixture with the air. It hardly is denied and cannot be denied with success that this gas often is carried by the wind great distances and over great tracts of Georgia land. On the evidence the pollution of the air and the magnitude of that pollution are not open to dispute. Without any attempt to go into details immaterial to the suit, it is proper to add that we are satisfied by a preponderance of evidence that the sulphurous fumes cause and threaten damage on so consider-

able a scale to the forests and vegetable life, if not to health, within the plaintiff State as to make out a case within the requirements of *Missouri* v. *Illinois*, 200 U. S. 496. Whether Georgia by insisting upon this claim is doing more harm than good to her own citizens is for her to determine. The possible disaster to those outside the State must be accepted as a consequence of her standing upon her extreme rights.

It is argued that the State has been guilty of laches. We deem it unnecessary to consider how far such a defense would be available in a suit of this sort, since, in our opinion, due diligence has been shown. The conditions have been different until recent years. After the evil had grown greater in 1904 the State brought a bill in this court. The defendants, however, already were abandoning the old method of roasting ore in open heaps and it was hoped that the change would stop the trouble. They were ready to agree not to return to that method, and upon such an agreement being made the bill was dismissed without prejudice. But the plaintiff now finds, or thinks that it finds, that the tall chimneys in present use cause the poisonous gases to be carried to greater distances than ever before and that the evil has not been helped.

If the State of Georgia adheres to its determination, there is no alternative to issuing an injunction, after allowing a reasonable time to the defendants to complete the structures that they now are building, and the efforts that they are making, to stop the fumes. The plaintiff may submit a form of decree on the coming in of this court in October next.

*Injunction to issue.*


MR. JUSTICE HARLAN, concurring.

The State of Georgia is, in my opinion, entitled to the general relief sought by its bill, and, therefore, I concur in the result. With some things, however, contained in the opinion, or to be implied from its language, I do not concur. When the Constitution gave this court original jurisdiction in cases

"in which a State shall be a party," it was not intended, I think, to authorize the court to apply in its behalf, any principle or rule of equity that would not be applied, under the same facts, in suits wholly between private parties. If this was a suit between private parties, and if under the evidence, a court of equity would not give the plaintiff an injunction, then it ought not to grant relief, under like circumstances, to the plaintiff, because it happens to be a State possessing some powers of sovereignty. Georgia is entitled to the relief sought, not because it is a State, but because it is a *party* which has established its right to such relief by proof. The opinion, if I do not mistake its scope, proceeds largely upon the ground that this court, sitting in this case as a court of equity, owes some special duty to Georgia as a State, although it is a party, while under the same facts, it would not owe any such duty to the plaintiff, if an individual.