COMMITTEE FOR the CONSIDERA-
TION OF the JONES FALLS SEWAGE
SYSTEM, an association of neighbor-
hood and community organizations and
persons, et al.

v.

Russell E. TRAIN, Individually and as
Administrator of the United States En-
vironmental Protection Agency, et al.,
Intervening Defendants.

Civ. No. 73-1188-Y.

United States District Court,
D. Maryland.

May 13, 1974.

Mitchell Stevan, Baltimore, Md., for plaintiffs.

George Beall, U. S. Atty., and James M. Kramon, Asst. U. S. Atty., for Russell E. Train.

Francis B. Burch, Atty. Gen., and Paul Walter and Donald H. Norel, Sp. Asst. Attys. Gen., for Dr. Neil Solomon.

George L. Russell, Jr., City Sol., and Harry S. Swartzwelder, Jr., and William Hughes, Asst. City Sols., for Dr. F. Pierce Linaweaver and Mayor and City Council of Baltimore City.

R. Bruce Alderman and Harry S. Shapiro, Towson, Md., and Douglas R. Due, Baltimore, Md., for C. Elmer Hoppert, Jr., and County Executive and County Council of Baltimore County.

Charles B. Heyman and Searle E. Mitnick, Baltimore, Md., for Carl M. Freeman, Trustee, and Carl M. Freeman Associates, Inc.

Hugo A. Ricciuti, Baltimore, Md., for Ralph DeChiaro Enterprises, Inc.

## MEMORANDUM AND ORDER

JOSEPH H. YOUNG, District Judge.

Plaintiffs, two individuals who reside in the vicinity of the Jones Falls stream and several citizens associations from nearby communities, seek injunctive relief restraining defendants from granting permits for sewer hook-ups into the Jones Falls sewer system and requiring them to revoke certain existing hook-up permits in cases where the connection has not yet been made. An order is also requested which would compel Russell E. Train, as the Administrator of the Environmental Protection Agency (E.P.A.) to perform allegedly non-discretionary acts required of him by the Federal Water Pollution Control Act Amendments of 1972 (F.W.P.C.A. or the Act), 33 U. S.C. §§ 1251–1376, 86 Stat. 816.

The Jones Falls stream system originates in Baltimore County, Maryland, and flows through parts of Baltimore City into the Patapsco River, which in turn flows through the Baltimore Harbor into Chesapeake Bay. It is alleged that discharges of raw sewage have occurred and continue to occur from the sewer systems of Baltimore City and Baltimore County into the Jones Falls stream.

The complaint, accompanied by a motion for a temporary restraining order and a motion for a preliminary injunction, was filed in this Court December 5, 1973, at which time the motion for a temporary restraining order was denied.

The defendants Dr. F. Pierce Linaweaver and the Mayor and City Council of Baltimore submitted a motion to dismiss the complaint which was joined in by all other defendants except Train.[1] A hearing was held on January 11, 1974, to consider this motion and the plaintiffs' motion for a preliminary injunction.[2] At that hearing the Court indicated that it was inclined to grant the defendants' motion to dismiss but, for reasons which will be hereinafter set forth, that ruling was reserved pending further developments. There is no longer any reason to delay disposition of the pending motions.

As grounds for their motion to dismiss the complaint, defendants assert two principal arguments: (1) that this Court lacks subject matter jurisdiction, and (2) if jurisdiction should be found, the Court should elect not to act under the doctrine of primary jurisdiction.

Plaintiffs allege jurisdiction under 33 U.S.C. §§ 1251–1376 (F.W.P.C.A.); 28 U.S.C. §§ 1331–1361; and 28 U.S.C. §§ 2201–2203 (Declaratory Judgment). Their complaint states "[t]his suit arises out of Title IV of the F.W.P.C.A., sections 1341, et seq."

---

1. The preliminary injunction does not pertain to the defendant Russell Train. By agreement of the parties, the Administrator has been granted an extension of time within which to answer the complaint until after the resolution of the pending motions to dismiss.

2. The motion to intervene as defendants of Carl M. Freeman, Trustee, Carl M. Freeman Associates, Inc., and Ralph DeChiaro Enterprises, Inc., was also considered and granted.

Section 1365 of the F.W.P.C.A. authorizes citizen suits

(1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a), and provides that the district courts shall have jurisdiction of such suits.[3] However, defendants argue that the exception or immunity clause set out in 33 U.S.C. § 1342(k) deprives the plaintiffs of any action under the Act.

Section 1342 of Title 33, United States Code (section 402 of the Act) is entitled "National pollutant discharge elimination system—Permits for discharge of pollutants." It spells out the procedures for the administration of the permit programs envisioned by the Act.

Subsection k of section 1342 provides, in pertinent part:

Until December 31, 1974, in any case where a permit for discharge has been applied for pursuant to this section, but final administrative disposition of such application has not been made, such discharge shall not be a violation of (1) section 1311, 1316, or 1342 of this title, or (2) section 407 of this title, unless the Administrator or other plaintiff proves that final administrative disposition of such application has not been made because of the failure of the applicant to furnish information reasonably required or requested in order to process the application. For the 180-day period beginning on October 18, 1972, in the case of any point source discharging any pollutant or combination of pollutants immediately prior to such date of enactment which source is not subject to section 407 of this title, the discharge by such source shall not be a violation of this chapter if such a source applies for a permit for discharge pursuant to this section within such 180-day period.

33 U.S.C. § 1342(k). Thus, if this provision is applicable, the defendants are, in effect, immune from suit under the Act.

On October 4, 1973, the City of Baltimore Department of Public Works submitted several applications for National Pollutant Discharge Elimination System waste discharge permits to the E.P.A., Region III, in Philadelphia, Pennsylvania. One of these applications was for the Back River waste water treatment plant. The Jones Falls sanitary sewer system and the Jones Falls pumping station which are involved in the present controversy are part of the overall sanitary sewer system which feeds into the Back River plant. As such, the moving defendants contend, they are covered by the permit application submitted to the E.P.A. for that plant and, therefore, the immunity provision applies in the instant case.

The Act itself lends strong support to the conclusion that the Jones Falls sewer system and pumping station should be considered included in the treatment plant application. At 33 U.S.C. § 1292

---

3. Part (b) of § 1365 requires 60 days notice before filing a citizen's suit and instructs that "[n]otice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation." 33 U.S.C. § 1365(b). Intervening defendants contend that plaintiffs should not be allowed to maintain this action because of their failure to comply with the notice regulations promulgated by the E.P.A. which appear at 40 C.F.R. § 135. However, plaintiffs' notice was mailed May 23, 1973, and the E.P.A. regulations did not become effective until July 9, 1973. In light of this fact, since the spirit of the provision was complied with, plaintiffs' notice was sufficient.

the Act contains the following definition:

(2) (A) The term "treatment works" means any devices and systems used in the storage, treatment, recycling, and reclamation of municipal sewage or industrial wastes of a liquid nature to implement section 1281 of this title, or necessary to recycle or reuse water at the most economical cost over the estimated life of the works, included intercepting sewers, outfall sewers, sewage collection systems, pumping, power, and other equipment, and their appurtenances; extensions, improvements, remodeling, additions, and alterations thereof; elements essential to provide a reliable recycled supply such as standby treatment units and clear well facilities; and any works, including site acquisition of the land that will be an integral part of the treatment process or is used for ultimate disposal of residues resulting from such treatment.

(B) In addition to the definition contained in subparagraph (A) of this paragraph, "treatment works" means any other method or system for preventing, abating, reducing, storing, treating, separating, or disposing of municipal waste, including storm water runoff, or industrial waste, including waste in combined storm water and sanitary sewer systems. * * *.

Moreover, it is clear from the application forms utilized by the E.P.A. and the conduct of the E.P.A. in processing the application for the Back River plant that the E.P.A. considers the sewer systems and pumping stations feeding into the plant to be covered by the same permit.

■ In light of these considerations, the Court concludes that the permit application filed by the City of Baltimore for the Back River waste water treatment plant properly includes the Jones Falls sanitary sewer system and pumping station for purposes of section 1342(k). Thus, at least at first glance, the defendants are entitled to the immunity there provided. .

■ However, at the time of oral argument on this motion, counsel for plaintiffs theorized that the last sentence of section 1342(k) would render the section inoperative in this case. That sentence reads: "For the 180-day period beginning on October 18, 1972, in the case of any point source discharging any pollutant or combination of pollutants immediately prior to such date of enactment which source is not subject to section 407 of this title, the discharge by such source shall not be a violation of this chapter if such a source applies for a permit for discharge pursuant to this section within such 180-day period." Plaintiffs interpret this sentence to mean that a discharger there described must apply for a permit within 180 days of October 18, 1972, and that if it does not it cannot thereafter obtain the immunity offered by the section.

Reference to 33 U.S.C. § 407 (section 13 of the Rivers and Harbors Act of 1899, 30 Stat. 1121) reveals that it does not apply to refuse matter " * * * flowing from streets and sewers and passing therefrom in a liquid state." This exception clause has been construed by the courts to exempt municipal dischargers of sewage from the operation of the 1899 Act. Illinois v. City of Milwaukee, 406 U.S. 91, 101, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972); United States v. Lindsay, 357 F.Supp. 784 (E.D.N.Y. 1973); United States v. City of Asbury Park, 340 F.Supp. 555 (D.N.J.1972).

Congressional awareness of this judicial construction is reflected in the "Discussion of Intent" which appears in the legislative history for the F.W.P.C.A. In discussing the Refuse Act of 1899 the report states:

[T]he Refuse Act authority has significant gaps (particularly its exemption of municipal waste treatment works) that render it seriously inadequate as a means of implementation of

a water pollution control program.[4] It further states: •

In 1899, the Congress enacted a statute which precisely prohibited the discharge of any "refuse" (subsequently defined by the Courts to include everything except sewage from municipalities).[5]

Thus, it is clear that the authors of this legislation would consider the sewer system here in question as a "source not subject to section 407." It is equally clear that the point source or sources here involved were discharging pollutants prior to October 18, 1972. However, the Court does not accept the argument that the final sentence of 1342(k) would therefore disallow the immunity offered by the section unless a permit application was filed within 180 days of the enactment date.

The second sentence of section 1342(k) states "in *any* case where a permit has been applied for" the immunity shall apply. (Emphasis supplied.) To read the entire section in a manner which would make it internally consistent, the final sentence should be interpreted as granting additional protection to the dischargers there described. In other words, since municipal dischargers of sewage were not previously subject to regulation, it is reasonable to assume that Congress intended to allow them an additional grace period of 180 days within which they would be immune from suit under the Act, even if they had not as yet filed a permit application. After that 180–day period had expired the second sentence of the section would be controlling. If the plaintiffs' interpretation is accepted, municipal dischargers would be required to file a permit application within the 180-day period in order to obtain immunity, but other dischargers, even though previously subject to regulation under the Refuse Act,

could obtain immunity regardless of when they filed so long as they filed before a suit was brought. Such a construction is neither logical nor consistent with the purpose of the immunity system.

■ Even accepting the application of section 1342(k) to the instant case, plaintiffs argue that defendants are still subject to suit under the Act because the complaint alleges violations of 33 U. S.C. § 1318, which violations are not suspended by section 1342(k). The weakness in this argument is that the defendants could not possibly have violated section 1318. In pertinent part that section provides: "Whenever required to carry out the objective of this chapter  *  *  *  the Administrator shall require the owner or operator of *any point source*" to maintain records, file reports, use monitoring devices, sample effluents and provide such other information as the Administrator might reasonably require. Obviously, a discharger cannot be in violation of this section or an order issued under this section unless such an order has in fact been issued. It is not alleged in the complaint nor does it appear to be the case that any such order has been issued to any of the defendants herein.

One further aspect of the immunity question remains to be considered. Plaintiffs suggest that they should be allowed the opportunity to demonstrate that final administrative disposition of the defendants' application has not occurred due to the defendants' failure to cooperate with the E.P.A. Such a showing would deprive defendants of the protection offered in section 1342(k).[6] However, it is apparent to this Court from the documents which have been filed in this case that it is too early in the application process for the plaintiffs

4. 1972 U.S.Code Cong. & Admin.News, 92nd Cong. 2nd Sess. at p. 3736.

5. *Id.*

6. The section provides that the immunity shall apply "unless the Administrator or

other plaintiff proves that final administrative disposition of such application has not been made because of the failure of the applicant to furnish information reasonably required or requested in order to process the application." 33 U.S.C. § 1342(k).

to be able to make the required showing.[7]

■ Since defendants are entitled to the statutory immunity, Counts 2, 3, and 4 of the complaint as amended, which allege violations of the F.W.P.C.A., must be dismissed. This leaves only Count 1 of the complaint which relates to the defendant Train and, of course, the intervening defendants. Forewarned by the Court of its probable ruling on defendants' motion to dismiss, plaintiffs have requested that should the Court decide to rule in defendants' favor without a further hearing, plaintiffs be granted leave to file an amended complaint. The purpose of this amended complaint would be to add an additional count alleging the existence of a public nuisance justiciable under federal common law.[8]

As a basis for this cause of action under federal common law the plaintiffs rely upon the recent Supreme Court decision in Illinois v. City of Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). The Supreme Court was there considering a motion by the State of Illinois for leave to file a bill of complaint, under the Court's original jurisdiction, against several Wisconsin cities and sewerage commissions for pollution of Lake Michigan. In a unanimous decision written by Justice Douglas the Court held that Illinois had stated a cause of action under federal common law for abatement of a public nuisance; that the term "laws" in 28 U.S.C. § 1331(a) included claims founded upon

federal common law; and that, because a federal question claim was therefore presented over which a district court would also have original jurisdiction, the Court would remit the case to an appropriate district court since its own original jurisdiction was not mandatory but merely permissible under 28 U.S.C. § 1251(b)(3).

■ Defendants maintain that the cause of action acknowledged to exist in *City of Milwaukee* is limited to governmental units and does not extend to private plaintiffs. This Court is in agreement with the defendants' position and therefore, even if plaintiffs amend their complaint, the Court would still lack jurisdiction as to all the defendants save Train and the intervenors.

The plaintiff in *City of Milwaukee* was, obviously, a state. The plaintiffs in the two principal cases relied upon by the Court in the course of its opinion were also states. Each of those cases indicates that the character of the plaintiffs as governmental units was integral to the determination that a federal cause of action existed.

Justice Douglas in *City of Milwaukee* wrote "when we deal with air and water in their ambient or interstate aspects, there is a federal common law, as Texas v. Pankey, 441 F.2d 236, recently held." 406 U.S. at 103. The decision in Texas v. Pankey, 441 F.2d 236 (10th Cir. 1971), was based upon the right of a state to have federal judicial protection of its ecological interests. In a passage which was quoted by the Supreme Court

7. At the hearing on January 11, 1974, dealing with this motion the Court reserved its ruling to await the compliance of the City of Baltimore with a request from the E.P.A. for additional information concerning the permit application. The Court indicated at that time that if the City did not timely supply the information to the E.P.A., the failure-to-cooperate language of 33 U.S.C. § 1342(k) might become relevant. The City did supply the requested information within the time allowed by the E.P.A.

8. On April 10, 1974, plaintiffs filed a supplementary motion to amend the complaint.

This latest motion seeks to add an additional count asserting that the alleged discharges into the Jones Falls stream system constitute "an imminent and substantial endangerment to the health of persons" under the provisions of 33 U.S.C. § 1364. This motion to amend will be granted. However, it can have no effect as against any of the defendants except Russell Train. Section 1364 authorizes only the Administrator to bring suit on behalf of the United States. It does not provide plaintiffs herein a cause of action under the Act.

in *City of Milwaukee*, the *Pankey* opinion states:

> As the field of federal common law has been given necessary expansion into matters of federal concern and relationship (where no applicable federal statute exists, as it does not here) the ecological rights of a State in the improper impairment of them from sources outside the State's own territory, now would and should, we think, be held to be a matter having basis and standard in federal common law and so directly constituting a question arising under the laws of the United States.

441 F.2d at 240, quoted 406 U.S. at 99–100.[9] In arriving at this conclusion the Tenth Circuit relied upon the early environmental case of Georgia v. Tennessee Copper Co., 206 U.S. 230, 27 S.Ct. 618, 51 L.Ed. 1038 (1907). The following language from that case was singled out both by the *Pankey* court and later by the Supreme Court in *City of Milwaukee*:

> The caution with which demands of this sort on the part of a state, for relief from injuries analogous to torts, must be examined, is dwelt upon in Missouri v. Illinois, 200 U.S. 496, 520, 521 [26 S.Ct. 268, 50 L.Ed. 572, 578, 579]. But it is plain that some such demands must be recognized, if the grounds alleged are proved. When the states by their union made the forcible abatement of outside nui-

sances impossible to each, they did not thereby agree to submit to whatever might be done. They did not renounce the possibility of making reasonable demands on the ground of their still remaining *quasi*-sovereign interests, and the alternative to force is a suit in this court. Missouri v. Illinois, 180 U.S. 208, 241 [21 S.Ct. 331, 45 L.Ed. 497, 512].

206 U.S. at 237. When speaking specifically to the question of water pollution the Court again turned to cases which demonstrate that it was the character of plaintiffs as governmental units which was seen as the justification for a federal action to deal with water pollution as a public nuisance.[10] See, e. g., North Dakota v. Minnesota, 263 U.S. 365, 44 S.Ct. 138, 68 L.Ed. 342 (1923); Missouri v. Illinois, 200 U.S. 496, 26 S.Ct. 268, 50 L.Ed. 572 (1906).

The case law which has developed in this area since the Supreme Court's decision in *City of Milwaukee* sheds little light on the question here presented. Neither the Court nor the attorneys in this case have been able to find a single case [11] in which a private plaintiff has attempted to bring suit under the federal common law rationale of *City of Milwaukee*. After careful consideration this Court has concluded that to allow such an action would be an improper extension of the Supreme Court's holding; an extension which was not contemplated by the Supreme Court [12] and which

---

9. Admittedly this passage was referred to by the Supreme Court in relation to its discussion of the "arising under" issue. However, it should also be noted that the Court stated "when we deal with air and water in their ambient or interstate aspects, there is a federal common law, *as Texas v. Pankey, 441 F.2d 236, recently held*" (emphasis supplied), 406 U.S. at 103. Nowhere did the Court indicate disagreement with the rationale of the *Pankey* decision.

10. Defendants emphasize the fact that the Supreme Court constantly referred to the concept of a "public nuisance" and that traditionally private individuals have not been allowed to bring an action to abate a public nuisance. This is consistent with this Court's view that the character of the plain-

tiff was an essential element of the *City of Milwaukee* holding.

11. There has been some limited discussion of this question in the legal literature with conflicting conclusions. See, e. g., Comment, Federal Common Law in Interstate Water Pollution Disputes, 1973 U.Ill.L.For. 141, 150; Comment, Federal Common Law and the Environment: Illinois v. Milwaukee, 2 Envir.L.Rep. 10168, 10172 (1972).

12. Footnote 6 of Justice Douglas' opinion states that "it is not only the character of the parties that requires us to apply federal law." This statement can be read in at least two different ways. It could mean a) that there were other considerations sufficient in themselves to require application of federal law, or b) that there were other fed-

would conflict with the theory underlying its decision.

Since this finding is dispositive of the motion to dismiss of Dr. Linaweaver and the Mayor and City Council, it is unnecessary to consider the primary jurisdiction question. Likewise, since all the defendants except Russell Train adopted the City's motion to dismiss and that motion will be granted herein, a consideration of the other grounds for dismissal raised by other defendants is unnecessary.

Accordingly, it is this 13th day of May, 1974, by the United States District Court for the District of Maryland, ORDERED:

1. That Counts 2, 3 and 4 of the complaint be, and the same are, hereby dismissed.

2. That plaintiffs' request for resumption of hearing on defendants' motion to dismiss be and the same is hereby denied.

3. That plaintiffs' motion to amend be, and the same is, hereby denied.

4. That plaintiffs' supplementary motion to amend be, and the same is, hereby granted.

eral interests which in addition to the character of the parties required the application of federal law although those other interests in themselves would not have been sufficient.

In the view this Court takes of the basis for the Supreme Court's decision, the latter interpretation is the proper one.