387 F.Supp. 526 (1975)
COMMITTEE FOR the CONSIDERATION OF the JONES FALLS SEWAGE SYSTEM, an association of neighborhood and community organizations and persons, et al.
v.
Russell E. TRAIN, Individually and as Administrator of the United States Environmental Protection Agency, et al. Intervenors.
Civ. No. 73-1188-Y.
United States District Court, D. Maryland.
January 15, 1975.
*527 Mitchell Stevan, Baltimore, Md., for plaintiffs.
James M. Kramon, Asst. U. S. Atty., Baltimore, Md., for defendant Train.
Charles B. Heyman, Baltimore, Md., for intervenors Carl M. Freeman, Trustee and Carl M. Freeman Associates, Inc.
Hugo A. Ricciuti, Baltimore, Md., for intervenor DeChiaro Enterprises, Inc.

MEMORANDUM AND ORDER
JOSEPH H. YOUNG, District Judge.
This is a suit under the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. §§ 1251-1376 (Supp. II, 1974) involving alleged pollution of the Jones Falls Stream System in Baltimore County and Baltimore City, Maryland. Named as defendants in the original complaint were Russell E. Train, Administrator of the Environmental Protection Agency, Dr. F. Pierce Linaweaver, Director of the Baltimore City Department of Public Works, the Mayor and City Council of Baltimore City, C. Elmert Hoppert, Jr., Buildings Engineer for Baltimore County, and County Executive and County Council of Baltimore County. Carl M. Freeman, Trustee, Carl M. Freeman Associates, Inc., and Ralph DeChiaro Enterprises, Inc., were subsequently named as intervening defendants.
By memorandum and order of May 13, 1974, the suit was dismissed as to all defendants except defendant Train and the intervening defendants. Committee for Consideration of Jones Falls Sewage System v. Train, 375 F.Supp. 1148 (D. Md. 1974). Plaintiffs have now filed an amended complaint for declaratory and injunctive relief against defendant Train and he, in turn, has filed a motion to dismiss, as have the intervening defendants.
*528 Section 1365, Title 33, United States Code, under which plaintiffs here proceed, provides in pertinent part:
§ 1365. Citizen suits  Authorization; jurisdiction
(a) Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf 
* * * * * *
(2) Against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator. The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.
* * * * * *
Plaintiffs allege that the Administrator has failed to perform non-discretionary duties imposed upon him by 33 U.S. C. §§ 1252(a), 1255(d), 1318(a), 1319 and 1364.[1] The complaint also contains *529 broad allegations that the Administrator has failed in other respects to perform his duties under the Act. However, the above sections are the only ones specifically relied upon by the plaintiffs as imposing non-discretionary duties.
The intervenors, in their motion to dismiss, contend that there is no section or provision of the Act which requires the Administrator to take any of the actions which plaintiffs demand. Thus, since section 1365 only authorizes suit against the Administrator where there is an alleged failure to perform a non-discretionary duty, they argue that the amended complaint must be dismissed. The Administrator, somewhat more realistically admits that some of plaintiffs' allegations concern non-discretionary duties, but suggests that by including these allegations plaintiffs are attempting to circumvent the immunity provision of the Act, 33 U.S.C. § 1342(k), which the Court relied upon in dismissing as to the other defendants. 375 F. Supp. at 1152-1153. Initially, it is necessary to determine which of the provisions relied upon by plaintiffs, if any, are mandatory in nature rather than directory.
Under section 1364 the Administrator is granted emergency powers which authorize him to resort immediately to the district courts for injunctive relief, regardless of any other provision of the Act, where there is evidence of an imminent and substantial endangerment to the health and/or welfare of persons. For present purposes the key word in the section is "may"; "notwithstanding any other provision of this chapter, the Administrator . . . may bring suit . . . ." It seems clear that the exercise of these emergency powers by the Administrator is discretionary. This is apparent not only from the language of the section but also from a consideration of the subject matter it addresses. The decision of whether or not to prosecute has traditionally been considered as within the discretion of the Executive Branch.[2]See United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965), cert. denied sub nom. Cox v. Hauberg, 381 U.S. 935, 85 S.Ct. 1767, 14 L.Ed.2d 700 (1965); Powell v. Katzenbach, 123 U.S.App.D.C. 250, 359 F.2d 234 (1965), cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966). With regard specifically to an administrative agency, the Supreme Court held in Moog Industries, Inc. v. Federal Trade Commission, 355 U.S. 411, 78 S.Ct. 377, 2 L.Ed.2d 370 (1958), that the F.T.C. must be left free to develop an enforcement policy based upon its administrative expertise and that a decision to prosecute or not to prosecute in a given case should only be overturned where there is a patent abuse of discretion.[3]
*530 The Administrator has enforcement powers under various provisions of the Act. He must be allowed to determine how a particular discharger should be proceeded against to best achieve the objectives of the Act. Since section 1364 is discretionary, plaintiffs cannot proceed under section 1365 on this ground.
Plaintiffs also seek to compel the Administrator to commence an enforcement action under 33 U.S.C. § 1319, the general enforcement provision of the Act. This Court's holding in its decision of May 13, 1974, is dispositive of this issue. The Court there held that the other defendants were entitled to the immunity of 33 U.S.C. § 1342(k). This immunity would extend to enforcement actions by the Administrator under section 1319.
The remaining sections relied upon by plaintiffs, sections 1252(a), 1255(d) and 1318(a), all direct that the Administrator shall perform certain acts or require others to perform certain acts. However, in several of these sections this mandatory language is qualified. Section 1318(a)(A) provides that "The Administrator shall require the owner or operator of any point source" to maintain such records, install such equipment, etc., as he may reasonably require "[w]henever required to carry out the objective of this chapter." (Emphasis supplied.) Section 1255(d) states that "[i]n carrying out the provisions of this section, the Administrator shall conduct, on a priority basis, an accelerated effort to develop, refine, and achieve practical application of" (emphasis supplied) waste management and waste treatment methods and more effective methods of measuring the impact of pollutants. Section 1255 authorizes the Administrator to conduct within the E.P.A. or to finance by grants projects demonstrating advanced methods of dealing with certain types of water pollution problems.
In this citizen suit under section 1365 to compel action under section 1318(a)(A), it will be necessary to establish first that some action under the section is "required to carry out the objective of this chapter," and second that either a) the Administrator has required none of the enumerated measures, or b) the measures he has ordered are less than he reasonably requires to achieve the objectives of the Act. There may be some question as to how section 1255(d) is triggered,[4] but for purposes of this motion the Court is satisfied that section 1255(d) can be considered nondiscretionary in some circumstances.
The Government's argument that allowing this suit to proceed allows the plaintiffs to end run the immunity provision of the Act (§ 1342(k)) is without merit. It is suggested that the Administrator is dealing with the problems of the Jones Falls sewer shed through the Act's permit procedures and that this, in effect, fulfills the Administrator's obligation to perform certain duties under the sections relied upon by plaintiffs. This may in fact be the case. However, at this stage of the litigation the plaintiffs' allegations are sufficient to withstand the motion to dismiss.
Accordingly, it is this 15th day of January, 1975 by the United States District *531 Court for the District of Maryland, ordered:
1. That the complaint, insofar as it seeks to compel the Administrator to initiate prosecutions under 33 U.S.C. §§ 1319 or 1364 be, and the same is, hereby dismissed, and
2. That in all other respects the motions to dismiss be, and the same are, hereby denied.
NOTES
[1] § 1252. Comprehensive programs for water pollution control

(a) The Administrator shall, after careful investigation, and in cooperation with other Federal agencies, State water pollution control agencies, interstate agencies, and the municipalities and industries involved, prepare or develop comprehensive programs for preventing, reducing, or eliminating the pollution of the navigable waters and ground waters and improving the sanitary condition of surface and underground waters. In the development of such comprehensive programs due regard shall be given to the improvements which are necessary to conserve such waters for the protection and propagation of fish and aquatic life and wildlife, recreational purposes, and the withdrawal of such waters for public water supply, agricultural, industrial, and other purposes. For the purpose of this section, the Administrator is authorized to make joint investigations with any such agencies of the condition of any waters in any State or States, and of the discharges of any sewage, industrial wastes, or substance which may adversely affect such waters.
* * * * *
§ 1255. Grants for research and development  Demonstration projects covering storm waters, advanced waste treatment and water purification methods, and joint treatment systems for municipal and industrial wastes.
* * * * *
Accelerated and priority development of waste management and waste treatment methods and identification and measurement methods
(d) In carrying out the provisions of this section, the Administrator shall conduct, on a priority basis, an accelerated effort to develop, refine, and achieve practical application of:
(1) waste management methods applicable to point and non-point sources of pollutants to eliminate the discharge of pollutants, including, but not limited to, elimination of runoff of pollutants and the effects of pollutants from inplace or accumulated sources;
(2) advanced waste treatment methods applicable to point and nonpoint sources, including inplace or accumulated sources of pollutants, and methods for reclaiming and recycling water and confining pollutants so they will not migrate to cause water or other environmental pollution; and
(3) improved methods and procedures to identify and measure the effects of pollutants on the chemical, physical, and biological integrity of water, including those pollutants created by new technological developments.
* * * * *
§ 1318. Inspections, monitoring, and entry
(a) Whenever required to carry out the objective of this chapter, including but not limited to (1) developing or assisting in the development of any effluent limitation, or other limitation, prohibition, or effluent standard, pretreatment standard, or standard of performance under this chapter; (2) determining whether any person is in violation of any such effluent limitation, or other limitation, prohibition or effluent standard, pretreatment standard, or standard of performance; (3) any requirement established under this section; or (4) carrying out sections 1315, 1321, 1342, and 1364 of this title 
(A) the Administrator shall require the owner or operator of any point source to (i) establish and maintain such records, (ii) make such reports, (iii) install, use, and maintain such monitoring equipment or methods (including where appropriate, biological monitoring methods), (iv) sample such effluents (in accordance with such methods, at such locations, at such intervals, and in such manner as the Administrator shall prescribe), and (v) provide such other information as he may reasonably require; and
* * * * *
§ 1364. Emergency powers
Notwithstanding any other provision of this chapter, the Administrator upon receipt of evidence that a pollution source or combination of sources is presenting an imminent and substantial endangerment to the health of persons or to the welfare of persons where such endangerment is to the livelihood of such persons, such as inability to market shellfish, may bring suit on behalf of the United States in the appropriate district court to immediately restrain any person causing or contributing to the alleged pollution to stop the discharge of pollutants causing or contributing to such pollution or to take such other action as may be necessary.
[2] The Act directs the Administrator to request the Attorney General to commence civil or criminal actions for alleged violations of the Act 33 U.S.C. § 1366.
[3] See also, Commonwealth of Kentucky ex rel. Hancock v. Ruckelshaus, 497 F.2d 1172 (6th Cir. 1974), where the court dismissed a claim against the E.P.A. under the Clean Air Act in part because it found the enforcement provisions in that act discretionary in nature, and Montgomery Environmental Coalition v. Fri, 366 F.Supp. 261 (D.D.C., 1973), where a suit under § 1365 of the F.W.P.C.A. seeking a court order to force the Administrator to initiate an enforcement action under 33 U.S.C. § 1319(a)(3) was dismissed because

[T]he decision whether to initiate enforcement actions under the Federal Water Pollution Control Act Amendments of 1973 is a discretionary matter for determination by the agency charged with responsibility for administering the Act and the Attorney General who is charged with responsibility for enforcing the Act.
[4] It could be argued that § 1255(d) imposes a duty upon the Administrator which he must perform regardless of the extent of his other activities under the section or, alternatively, that his duty under § 1255(d) only arises in connection with the Administrator's activities under other provisions of the section.